UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                  Case No. 12-20705
                                               Honorable Thomas L. Ludington

v.

BRUCE ALAN EDWARD,

      Defendant.

_____/

**OPINION AND ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE**

In April 2010, Microsoft Corporation Anti-Piracy investigator Steve Studhalter informed Special Agent Michael Godfrey (with the United States Department of Homeland Security) that he believed Bruce Edward was selling counterfeit copies of Microsoft products on eBay.com. The allegation came after Edward had three shipments of counterfeit software seized by Customs and Border Protection on March 26, 2009; January 9, 2010; and February 5, 2010. Each incident involved orders of counterfeit software shipped from China to Edward's Atlanta, Michigan home, and each time Edward was sent a related seizure notice.

Microsoft sent a "cease and desist" letter to Edward on August 24, 2010. After law enforcement subsequently made controlled purchases from Edward online, a federal search warrant was executed at Edward's residence on September 16, 2010. The search uncovered 111 copies of Microsoft software, software sleeves, receipts from the United States Postal Service, and a copy of the August 24, 2010 "cease and desist" letter.

Edward has since been charged with five counts of criminal copyright infringement and one count of mail fraud. The indictment alleges that between May 2008 and September 2010, Edward "engaged in the willful and unauthorized distribution and reproduction of copyrighted

computer software in violation of federal law." Indictment 1, ECF No. 3. Specifically, the indictment alleges that Edward "unlawfully distributed these copyrighted works by purchasing counterfeit copies of the copyrighted works from China and Singapore, selling the copyrighted works on eBay, . . . and then using the U.S. Postal Service to deliver the counterfeit software." *Id*. Trial is set to commence on December 10, 2013.

# I

On November 25, 2013, the government filed a motion in limine to exclude patent-infringement evidence from the trial. The government indicates that Edward has "served . . . several documents that he may offer into evidence at trial[,]" including documents pertaining "to a civil lawsuit by a technology company called i4i against Microsoft Corporation for patent infringement." Pl.'s Mot. 1–2, ECF No. 37. The government argues that these documents are in no way relevant to the charges at hand.

In his response to the government's motion, Edward argues that "[t]he evidence [he] seeks to introduce, whether by court documents from the *i4i* litigation or from cross-examination of Microsoft employees, will establish that Microsoft did not have a valid copyright on Microsoft Office 2003 Professional. Rather, it violated the patent of i4i." Def.'s Resp. 2, ECF No. 39. It seems that Edward plans to argue that because some versions of the Microsoft software at issue violated a patent, it cannot be subject to a valid copyright.

## A

Before proceeding, a framework of the governing law is appropriate. Edward has been charged with infringing Microsoft's copyrighted works, and his arguments implicate the protection offered by patents. Both copyright and patent involve "intellectual property,"
- 2 -

although the two are "quite different in important respects." Robert A. Gorman, *Copyright Law* 5 (2d ed. 2006).

The Patent and Copyright Clause empowers Congress, "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Soon after the adoption of the Constitution, the First Congress enacted the Patent Act of 1790, which allowed the grant of a limited monopoly of 14 years to any applicant that "hath . . . invented or discovered any useful art, manufacture, . . . or device, or any improvement therein not before known or used." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146–47 (1989) (quoting 1 Stat. 109, 110). Today's patent statute is "remarkably similar" to the two Patent Acts from the 1790s. *Id.* at 148. Protection is offered to "whoever intents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Id.* (brackets omitted) (quoting 35 U.S.C. § 171).

The law of copyright has developed "in response to significant changes in technology." *Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417, 430 (1984). "Repeatedly, as new developments have occurred in this country, it has been the Congress that has fashioned the new rules that new technology made necessary." *Id.* at 430–31. At this point, copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression." *Id.* at 432 (quoting 17 U.S.C. § 102(a)). The Copyright Act "grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies." *Sony Corp.*, 464 U.S. at 432 (citation omitted). "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the

five ways set forth in the statute, 'is an infringer of the copyright.'" *Id*. at 433 (quoting 17 U.S.C. § 501(a)).

Copyright protection "is much easier to secure and lasts much longer" than patent protection, but "patent protection is more powerful in curbing competitors." Gorman, *Copyright Law* 7. For example, "copyright in a computer program protects only against copying or paraphrasing the sequence of commands . . . . It does not prevent a person from replicating the process that the computer program implements, provided there is no copying of the program." *Id*. at 6. A patent of the underlying process, in contrast, "will preclude others who seek to use or to market the protected process, even by means of a computer program of altogether different configuration . . . ." *Id*. at 7.

**B**

The litigation involving i4i and Microsoft is also worth mentioning. The case concerned i4i's allegations that certain versions of Microsoft Word, Microsoft's word-processing software, infringed i4i's patent. After a seven-day trial, the jury found Microsoft guilty of willful infringement.

In 1994, i4i applied for a patent concerning a method for processing and storing information about the structure of electronic documents. Then, i4i developed several software products that utilize the method. One of these products is "'add on' software for Microsoft Word, which expands Word's capability to work with documents containing custom XML." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 839 (Fed. Cir. 2010). After the jury's verdict, the district court entered a permanent injunction that prohibits Microsoft from, among other things, selling or using "any Infringing and Future Word Products" that have the capability of opening files containing custom XML data. *See* Injunction 1, *attached as* Pl.'s Mot. Ex. 2. This

injunction was based on the fact that some versions of Word incorporated i4i's patented process concerning the use of custom XML data.

## II

The government argues that any evidence related to patent infringement is not relevant to the question of whether Microsoft has a valid copyright in the relevant software and whether Edward willfully infringed that copyright. The government is correct, and its motion in limine will be granted.

To establish copyright infringement, the government must demonstrate that (1) Microsoft owned a valid copyright in the computer software at issue, and (2) Edward willfully infringed the copyright by copying protectable elements of the work. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also* 17 U.S.C. § 506(a). However, "[u]nlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Mazer v. Stein*, 347 U.S. 201, 217 (1954). Indeed, "patent and copyright laws protect *distinct aspects* of a computer program." *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992) (emphasis added) (citing *Baker v. Selden*, 101 U.S. 99, 103 (1879)). As detailed above, "[t]itle 35 protects the process or method performed by a computer program; title 17 protects the expression of that process or method. While title 35 protects any novel, nonobvious, and useful process, title 17 can protect a multitude of expressions that *implement that process*." *Atari Games*, 975 F.2d at 839 (emphasis added).

It follows that even if Microsoft Word incorporates a process which infringes on a patent, it can still be an expression that merely implements the patented process, and thus would remain a protectable work. In short, simply because software infringes on a patent does not mean that it

cannot be otherwise protected by copyright. In fact, it is only where "the patentable process is embodied inextricably in the line-by-line instructions of the computer program" that "the process merges with the expression and precludes copyright protection." *Id*. at 839–40 (citation omitted). And, notably, that is not the situation faced here: as the Federal Circuit recognized, i4i's patented process merely "expand[ed] Word's capability to work with documents containing custom XML." *i4i*, 598 F.3d at 839. Indeed, after i4i was awarded the injunction against Microsoft in 2009, Microsoft was still permitted to sell Word Products that did not infringe upon i4i's patent. *See* Permanent Injunction 1–2.

Because the implementation of i4i's patented process is not "embodied inextricably" in the Microsoft Word software—the process could be removed from non-offending versions of Word—Microsoft Word remains a copyrightable work, as is the Microsoft Office suite which includes Microsoft Word. Thus, any evidence concerning whether the Microsoft software at issue infringed upon an i4i patent is irrelevant, and it will not be admitted in the trial.

Accordingly, it is **ORDERED** that the government's motion to exclude patent-infringement evidence, ECF No. 37, is **GRANTED**.

Dated: December 10, 2013                                  s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

---

**PROOF OF SERVICE**
The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 10, 2013.
                    s/Tracy A. Jacobs
                    TRACY A. JACOBS